IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BILLY LEE BOLES, JR.,            )
                                 )
            Plaintiff,           )
                                 )
       v.                        )        1:13CV489
                                 )
UNITED STATES,                   )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This is a personal injury action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671, et seq. ("FTCA"). Before the court are three motions: the United States' motion to dismiss or in the alternative for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56 (Doc. 6); Plaintiff Billy Lee Boles, Jr.'s motion to file an amended complaint pursuant to Rule 15 (Doc. 11); and the United States' motion to strike Boles' demand for a jury trial. For the reasons set forth below, the Government's motion to dismiss will be granted in part and denied in part, its motion to strike Boles' jury demand will be granted, and Boles' motion to amend will be granted in part and denied in part.

## I. BACKGROUND

The facts, viewed in the light most favorable to Boles, are

as follows:[1]

In approximately September 2009, Terry Porter, a civilian employee of the United States Coast Guard ("Coast Guard") in Portsmouth, Virginia, was hospitalized for mental illness. (Doc. 11-1 ¶ 4.) As a result, his Coast Guard security access was suspended. (Id.) Coast Guard employees, including Amy Kritz, were aware of Porter's hospitalization. (Id. ¶ 5.) On or about September 18, 2009, Kritz, concerned about the safety of Porter and others, encouraged him to store his privately-owned firearms in the Coast Guard's Armory in Portsmouth. (Id. ¶ 7.) Kritz assisted Porter in transferring his nine firearms – which included a Norinco 7.62 x 39 mm rifle, a shotgun, and several handguns – to the Armory. (Id. ¶¶ 8-9.)

On January 14, 2010, the Suffolk Juvenile and Domestic Relations District Court of the Commonwealth of Virginia entered a two-year protective order against Porter because, among other things, he had used a weapon in connection with his domestic abuse of his family. (Id. ¶¶ 12-13.) The protective order, which was entered into the Virginia Criminal Information Network, prohibited Porter from possessing any firearm or ammunition. (Id. ¶ 14.) Kritz, who had monitored the progress

---

[1] Because Boles seeks to substitute the new negligence claims in his proposed amended complaint (Doc. 11-1) as an expansion of his two negligence claims in his original complaint, the court's analysis will focus on the newly-articulated negligence claims.

of Porter's domestic abuse case, attended the hearing and was aware of the protective order. (Id. ¶¶ 16, 36.) Sometime thereafter, Porter's wife ("Mrs. Porter") and her children moved to Lexington, North Carolina, where they resided in a home next to Boles. (Id. ¶ 15.)

On or about March 22, 2010, Porter removed his firearms from the Armory, with the assistance of several Coast Guard employees. (Id. ¶¶ 19-22.) Ten months later, on January 9, 2011, after discovering the location of his family, Porter traveled to Lexington and threatened his wife at gunpoint, using the firearms obtained from the Armory. (Id. ¶¶ 26, 28.) During the incident, Boles heard his dog barking, opened his door, and heard Mrs. Porter's cry for help. (Id. ¶ 29.) Boles called out to Mrs. Porter from his front porch in an attempt to help her. (Id. ¶ 30.) In response, Porter shot Boles several times, seriously and permanently injuring him and damaging his property. (Id. ¶¶ 30-32.)

Boles contends that the shooting was a result of the Coast Guard's negligence in allowing Porter to reclaim the firearms he used from the Armory, despite the fact the Coast Guard employees were aware that he had voluntarily committed himself to a mental hospital and had a domestic violence protective order, which was a public record, entered against him. Boles' original complaint sought relief under two counts of negligence: Count I alleged

that Kritz was negligent for releasing the firearms to Porter, in violation of 18 U.S.C. § 922(g)(4); Count II alleged that other unnamed Coast Guard employees were negligent in failing to supervise Kritz, allowing return of the firearms, and failing to warn Boles. (Doc. 1.)

Partly as a result of the briefing on the pending motions, Boles moved to amend his complaint to reformulate his original claims and to add several others. Specifically, Count I of the proposed amended complaint alleges that Kritz, by encouraging and assisting Porter in storing his personal firearms at the Armory, assumed a duty to act with reasonable care and breached it by, among other things, failing to communicate Porter's mental health status and protective order restriction to Coast Guard employees and failing to prevent the return of the firearms to Porter. (Doc. 11-1 ¶¶ 34-44.) Boles alleges in Count I that Kritz knew that Porter was prohibited from possessing the firearms pursuant to the Gun Control Act of 1968, 18 U.S.C. § 921 et seq. (the "Act"), specifically § 922(g)(4) (making it unlawful for anyone who has been adjudicated as a mental defective or who has been committed to a mental institution to possess a firearm) and § 922(g)(8) (making it unlawful for anyone to possess a firearm who is subject to certain domestic violence protective orders). (Doc. 11-1 ¶¶ 35, 37.) Count II alleges that Coast Guard employees at the Armory

assumed a duty to act reasonably when they accepted Porter's personal firearms for storage and breached it by, among other things, releasing the firearms under the circumstances and failing to warn Mrs. Porter and others. (Id. ¶¶ 45-49.) Count III alleges negligence *per se* as to unnamed Coast Guard employees for returning Porter's firearms to him in violation of § 922(d)(8) of the Act (making it unlawful to dispose of a firearm to a person knowing or having reasonable cause to believe he is subject to certain domestic violence protective orders). (Id. ¶¶ 50-54.) Count IV alleges negligence *per se* as to unnamed Coast Guard employees for returning Porter's firearms to him in violation of § 922(d)(4) of the Act (making it unlawful to dispose of a firearm to a person knowing or having reasonable cause to believe he has been adjudicated as a mental defective or has been committed to any mental institution). (Id. ¶¶ 55-60.) Count V alleges negligence *per se* as to unnamed Coast Guard employees for returning Porter's firearms to him in violation of Va. Code Ann. § 18.2-56.1(A) (making it unlawful for anyone to recklessly handle a firearm). (Id. ¶¶ 61-65.) Finally, Count VI alleges that once the Coast Guard returned Porter's firearms, it had a duty to protect Porter from harming others and to warn Mrs. Porter based on a special relationship between the United States and Porter under Virginia law by virtue of the employer-employee relationship. (Id. ¶¶ 66-76.)

The Government moves to dismiss on the ground that this court lacks subject-matter jurisdiction over the action because the Government has not waived sovereign immunity. The Government relies on 28 U.S.C. § 2680(h), which provides that the FTCA's limited waiver of sovereign immunity shall not apply to "[a]ny claim arising out of assault [or] battery," which it contends Boles' action does. The Government also moves to dismiss and opposes Boles' motion to amend on the grounds of Boles' alleged failure to exhaust administrative remedies and futility based on a failure to state a claim for negligence under the FTCA and Virginia law. (Doc. 14.) Boles responds that the Government misreads applicable law and that he has stated proper FTCA claims premised on Virginia law.

The arguments will be addressed in turn.

## II.  ANALYSIS

### A.  United States' Rule 12(b)(1) Motion

As a threshold matter, the Government challenges the court's jurisdiction over the subject matter of this action. "As [a] sovereign, the United States enjoys immunity from suits for damages at common law." Perkins v. United States, 55 F.3d 910, 913 (4th Cir. 1995). Boles predicates jurisdiction solely on the FTCA, which "creates a limited waiver of the United States' sovereign immunity by authorizing damages actions for injuries caused by the tortious conduct of federal employees

acting within the scope of their employment, when a private person would be liable for such conduct under state law." Suter v. United States, 441 F.3d 306, 310 (4th Cir. 2006); see 28 U.S.C. § 1346(b)(1). Absent application of the FTCA, this court lacks subject-matter jurisdiction over suits for money damages against the United States. Kerns v. United States, 585 F.3d 187, 194 (4th Cir. 2009). The burden of establishing the court's subject-matter jurisdiction lies with the plaintiff. Id.

The FTCA provides in relevant part that the district courts shall have exclusive jurisdiction over civil actions on claims against the United States

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). An intentional tort exception provides that the FTCA's limited waiver of sovereign immunity shall not apply to "[a]ny claim arising out of assault, battery" or certain other listed torts. 28 U.S.C. § 2680(h). The Government argues that this exception should be read broadly, that Boles' various negligence claims arise out the assault and

battery committed by Porter, and that Boles' claims are therefore jurisdictionally barred.

Boles contends that <u>Sheridan v. United States</u>, 487 U.S. 392 (1988), controls the jurisdictional outcome in this case. The court agrees. In <u>Sheridan</u>, the Supreme Court considered whether section 2680(h) barred a claim that three naval corpsmen were negligent when they encountered a clearly intoxicated off-duty serviceman lying on the floor in a naval hospital, attempted to take him to the emergency room, but fled when they saw the barrel of a rifle among his things. <u>Id.</u> at 395. The corpsmen never reported that an intoxicated serviceman was in possession of a dangerous weapon. <u>Id.</u> The intoxicated serviceman later fired shots into the plaintiffs' automobile, causing personal injury and property damage. <u>Id.</u> The Court rejected the Government's argument that the intentional tort exception barred the plaintiffs' claims against it. The Court reasoned that the employment relationship (the fact the intentional tortfeasor was a federal employee) was irrelevant to the underlying negligence claims, which alleged (among other things) the Government's failure to abide by its own voluntary regulations requiring the reporting of the presence of firearms and its failure to "perform [its] 'good Samaritan' task in a careful manner." <u>Id.</u> at 402 (citation omitted); <u>see also</u> <u>Durden v. United States</u>, 736 F.3d 296, 309 (4th Cir. 2013). In reaching this result, the

Court noted that the intoxicated employee was off duty at the time of his actions and, citing Panella v. United States, 216 F.2d 622 (2d Cir. 1954), stated that the exception should not apply to claims of assault and battery by persons who were not acting within the scope of their office or employment. 487 U.S. at 400-01 (stating that "[t]he exception should therefore be construed to apply only to claims that would otherwise be authorized by the basic waiver of sovereign immunity"). Thus, the Court found that the FTCA waived sovereign immunity for suit against the corpsmen who acted in the scope of their employment to the extent the claims were "entirely independent of" the intentional tortfeasor's employment status. Id. at 401.

The Government relies on the Fourth Circuit's decision in Perkins, but that reliance is misplaced. In Perkins, the wife of an employee hired by an agent of the Internal Revenue Service ("IRS") to remove equipment owned by a delinquent taxpayer from a coal mine sued the Government for wrongful death, claiming the death was caused by the IRS agents' negligence in violating state statutes and Internal Revenue Manual provisions governing the seizure of assets. 55 F.3d at 912. The court held that 28 U.S.C. § 2680(c), which exempts from the FTCA "[a]ny claim arising in respect of the assessment or collection of any tax," barred the plaintiff's suit because the IRS agent involved was acting in the scope of his tax-collecting duties when he

contracted with the decedent.  Id. at 913, 915.  Pertinent here,
the court also affirmed the district court's refusal to allow
the plaintiff to amend her complaint to add a claim for
negligent supervision.  The Government points to the court's
statement that "[a]n allegation of 'negligent supervision' will
not render an otherwise unactionable claim actionable so long as
the negligent supervision claim depends on activity of the
supervised agent which is itself immune."  Id. at 916.

In reaching its conclusion, the Perkins court cited Thigpen
v. United States, 800 F.2d 393 (4th Cir. 1986), and Hughes v.
United States, 662 F.2d 219 (4th Cir. 1981).  The Government
contends that these decisions also support its position.  In
Thigpen, the Fourth Circuit held that section 2680(h) barred a
suit against the United States for negligent supervision by Navy
physicians and hospital staff where the minor plaintiffs had
been molested by a naval hospital corpsman who monitored their
post-surgical condition.  The court stated that "[s]ection
2680(h) . . . bars FTCA claims that allege the negligence of
supervisors but depend upon the existence of an assault or
battery by a government employee."  Thigpen, 800 F.2d at 395.
Similarly, in Hughes, the plaintiff brought suit on behalf of
two minor children who were sexually assaulted by a United
States Postal Service employee who had lured them into his

postal truck.[2]  The Fourth Circuit held that the suit arose out of the intentional act of the employee who was in the course of his mail route, not the negligence of any other federal employee, and affirmed the district court's dismissal of the plaintiff's FTCA claim.  Hughes, 662 F.2d at 220.

These cases provide limited help to the Government. Perkins stands for the proposition that a plaintiff may not circumvent section 2680(h) by pleading negligent retention or negligent supervision where the only basis for the Government's liability arises out of the employment relationship and is premised on the intentional tort of a federal employee.  See Perkins, 55 F.3d at 917; see also Sheridan, 487 U.S. at 406 (Kennedy, J., concurring in the judgment) ("To determine whether a claim arises from an intentional assault or battery and is therefore barred by the exception, a court must ascertain whether the alleged negligence was the breach of a duty to select or supervise the employee-tortfeasor or the breach of some separate duty independent from the employment relation."). As Boles notes, he has not pleaded negligent retention or supervision of Porter.

---

[2] The employee had previously been charged with a similar offense, pleaded guilty to a reduced charge, and received psychiatric treatment.  Shortly after sentencing, the girl's father met with the postal supervisor, who refused the father's request to have the employee relieved of his delivery duties.  Hughes, 662 F.2d at 220.

Moreover, both _Thigpen_ and _Hughes_ are questionable authorities in light of the subsequently-decided _Sheridan_. The portion of _Thigpen_ upon which the Government seeks to rely was its articulation of section 2680(h), _see_ 800 F.2d at 395 (finding that section 2680(h) "erects a bar to all claims which rely on the existence of an assault or battery by a government employee" irrespective of section 1346(b)(1)'s "scope of employment" requirement), which has been rejected by _Sheridan_. Similarly, _Hughes_ found no liability for negligent supervision of a mailman who, while on his route, molested two young girls. In a short _per curiam_ opinion, the Fourth Circuit noted that the district court dismissed the complaint on the ground that the claims, "although framed in terms of negligence, actually arose out of the assaults and batteries committed by [the mailman]" and affirmed "for reasons adequately stated by the district court." 662 F.2d at 220. The district court had concluded dismissal was required because "there would have been no assault except for the separate and independent acts of [the mailman]." _Hughes v. Sullivan_, 514 F. Supp. 667, 670 (E.D. Va. 1980). To the extent this reading is based on the fact that the dismissed claim was brought under a negligent retention theory, it is consistent with _Sheridan_ and does not help the Government; however, to the extent the Government intends it to be read more broadly, it is inconsistent with _Sheridan_.

Finally, the Government relies on United States v. Shearer, 473 U.S. 52 (1985), which predates Sheridan. There, four justices, led by Chief Justice Burger, noted that

> [r]espondent cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims for assault or battery; in sweeping language it excludes any claim arising out of assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee.

Id. at 55 (plurality opinion). Despite its broad language, the plurality's analysis is nevertheless limited to cases where the plaintiff attempts to circumvent section 2680(h) and hold the United States liable, on theories of negligent hiring or negligent retention, for the intentional act of its employee. In that sense, it is no broader than Perkins, Thigpen, and Hughes.[3]

Here, Counts I though V of Boles' proposed amended complaint clearly do not seek to impose liability on the Government on the basis of Porter's employment. The fact that Porter was allegedly a federal employee when he surrendered his firearms, was permitted to retrieve them, and committed the

---

[3] Wise v. United States, 8 F. Supp. 2d 535, 542–43 (E.D. Va. 1998), cited by the Government, also involved an attempt to hold the United States liable on theories of respondeat superior, negligent hiring, negligent supervision, and negligent training for the intentional tort of a federal employee. It therefore provides no assistance to the Government's argument.

shooting is wholly irrelevant, because the bases for alleged
liability are the actions of Armory staff, which are "entirely
independent of [Porter's] employment status." Sheridan, 487
U.S. at 401 (majority opinion). These counts are based on the
alleged breach of an independent duty by the Coast Guard
employees not to surrender weapons to Porter in violation of the
Virginia protective order and Virginia law.[4]

Count VI, however, is more problematic. Boles predicates
liability on a "special relationship" arising under Virginia law
"by virtue of the employer-employee relationship" between Porter
and the Government. (Doc. 11-1 ¶ 67.) Boles never alleges that
Porter committed the shooting while in the scope of his
employment – a *sine qua non* for application of the FTCA, and it
is implausible that he did so. Indeed, Boles alleges that

---

[4] This conclusion is supported by the Fourth Circuit's recent decision
in Durden, where the plaintiff sought to hold the United States liable
when an intoxicated U.S. Army Specialist entered her home and raped
her in front of her children. 736 F.3d at 298. The court held that,
"although the government's ability (i.e., legal duty) to control a
tortfeasor must be independent of the tortfeasor's status as a
government employee, knowledge of the tortfeasor's propensity for
violence or criminal history gained as a result of such status does
not, *per se*, nullify an FTCA claim." Id. at 309. The Fourth Circuit
ultimately affirmed the district court's grant of summary judgment to
the Government but held that the district court erred when it
concluded that the intentional-tort exception barred the plaintiff's
claim. 736 F.3d at 309. As in Durden, Boles alleges in Counts I
through V that Kritz and other federal employees had an independent
legal duty not to release Porter's firearms to him irrespective of his
employment relationship. The fact that the employees' knowledge of
Porter's propensity for domestic abuse (as evidenced by the protective
order) was gained as a result of Porter's employment status does not
nullify that claim.

Porter's security access was "suspended" throughout the relevant time period. (Doc. 11-1 ¶ 18.) In the absence of any claim that Porter's actions fall within the FTCA or any other exception, therefore, Count VI is barred by sovereign immunity. This result does not change even if Count VI were construed to plausibly allege that Porter acted within the scope of his employment. Although the claim is not nominally one for negligent supervision or retention, it nevertheless seeks damages from Porter's assault predicated wholly upon Porter's employment relationship. Porter's actions would then fall initially within the general waiver of section 2680(h) of the FTCA. But because the employment relationship, far from being "irrelevant" to the negligence claim, is indeed the very basis of the claim, Count VI would be ensnared by the intentional tort exception and thus barred. <u>Sheridan</u>, 487 U.S. at 395.[5] Either way, Count VI cannot proceed because of sovereign immunity.

---

[5] Even if this were not so, it is apparent that Count VI should be dismissed for failure to state a claim. Under the "special relationship" doctrine, "[b]efore any duty of care can arise to control the conduct of third persons, there must be a special relationship between the defendant and either the plaintiff or the third person." <u>Holles v. Sunrise Terrace, Inc.</u>, 509 S.E.2d 494, 497 (Va. 1999). Virginia courts look to the Restatement (Second) of Torts, specifically sections 315(a) and 319. <u>See</u> <u>Nasser v. Parker</u>, 455 S.E.2d 502, 504 (Va. 1995). Pertinent here, section 319 provides: "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." Restatement (Second) of Torts § 319 (1965). The Virginia Supreme Court has held that, "in order to

In sum, Boles' claims in Counts I through V fall within the FTCA and are not barred by the intentional-tort exception. Consequently, this court has subject-matter jurisdiction over them pursuant to 28 U.S.C. § 1346(b)(1). Count VI is barred by sovereign immunity.

## B.  Motions to Dismiss and to Amend the Complaint

### 1.  Standard of review

Boles seeks leave to amend his complaint pursuant to Federal Rule of Civil Procedure 15. The Government contends that the motion should be denied because the amendments would be futile, for reasons stated in the Government's motion to dismiss

establish a 'special relation' under Restatement § 315(a) and overcome a [motion to dismiss] . . . a plaintiff must allege facts which, if proven, would show that the defendant had 'take[n] charge' of a third person within the meaning of § 319." Nasser, 455 S.E.2d at 505 (finding an ordinary doctor-patient relationship insufficient to establish that psychiatrist had taken charge of patient who caused harm to another); cf. Dudley v. Offender Aid and Restoration of Richmond, Inc., 401 S.E.2d 878, 881-83 (Va. 1991) (finding that halfway house on contract with defendant to fulfill a convicted felon's term of imprisonment had "taken charge" of him and thus had liability when he escaped, broke into a woman's home, and raped and killed her). Here, Boles alleges the Coast Guard had a duty to protect Porter from harming himself and others, as well as a duty to warn Mrs. Porter (who ostensibly could have protected herself and avoided the confrontation that injured Boles). (Doc. 11-1 ¶¶ 66-71.) Absent is any allegation that the Coast Guard "took charge" of Porter in connection with the storage of his firearms. At best, it took charge of *his firearms* in what was essentially a bailment. Moreover, the shooting apparently occurred while Porter was off-duty and far outside the scope of his employment. He was not only warned, but *ordered* by the Virginia court not to possess any firearm. Boles has provided no indication that Virginia courts would extend the special relationship doctrine in the fashion he seeks based merely on an employer-employee relationship. Cf. Kellermann v. McDonough, 684 S.E.2d 786, 793 (Va. 2009) (declining to expand doctrine).

as well as its opposition to Boles' motion to amend.  Although district courts should freely grant leave to amend a complaint, a court may deny leave when an amendment would be futile, i.e., when it fails to state a claim.  Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).  As noted earlier, the court will consider Boles' proposed amended complaint as the operative complaint for the purposes of these motions.[6]

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Twombly, 550 U.S. at 557).

The Government raises several arguments, which will be addressed in turn.

---

[6] The court declines the Government's request to convert its motion into one for summary judgment at this early stage.  Therefore, the court will consider only those materials properly before it on the motion to dismiss.  See Fed. R. Civ. P. 12(d).

## 2.  Failure to exhaust administrative remedies

The Government first contends that because Boles' administrative claim with the Government details only a claim against Kritz for negligent entrustment of the firearms, Boles has not exhausted his administrative remedies and his remaining claims should be dismissed for want of subject-matter jurisdiction. (Doc. 14 at 2–6.)

The FTCA provides that no action shall be instituted against the Government in district court "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency . . . ." 28 U.S.C. § 2675(a).  The Fourth Circuit has characterized this requirement as jurisdictional.  See Lopatina v. United States, 528 F. App'x 352, 356 (4th Cir. 2013); Drew v. United States, 217 F.3d 193, 196, aff'd by equally divided court 231 F.3d 927 (4th Cir. 2000) (en banc), cert. denied 532 U.S. 1037 (2001); Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986); see also Kokotis v. U.S. Postal Serv., 223 F.3d 275, 278 (4th Cir. 2000) (two year limitations period in section 2675(a) is jurisdictional); Patock v. Fox News Television Channel, Civ. A. No. 1:11-cv-974, 2012 WL 695892, at *3 (E.D.

Va. Mar. 1, 2012) (same).[7]

The Government asserts that Boles is jurisdictionally barred from asserting claims other than negligent entrustment of the firearms on the part of Kritz because those other claims did not appear in his administrative claim and thus were never "presented" to the agency. In his administrative claim, Boles stated:

> The injury to Mr. Boles resulted from the negligent actions of Amy Kritz, an employee of the United States Coast Guard, who was acting in the course and scope of her employment with the [Coast Guard] when she negligently entrusted a firearm to [Porter]. On the date of the negligent entrustment, Amy Kritz knew [Porter] had a history of violent behavior, had been committed to a mental institution, was under a 50B restraining order, had perpetrated misuse of a firearm in the past, and represented a credible threat to the physical safety of another human being.
> . . .
>
> Prior to the incident that occurred on January 9, 2011, Mr. Porter had surrendered his firearms to the [Coast Guard] for placement in the [Armory] after he was released from a mental hospital. The [Coast Guard] was aware he had been hospitalized.
>
> Before the shooting, which occurred on January 9, 2011, Mr. Porter requested the return of his weapons and Ms. Kritz relinquished control of several dangerous weapons to him, although she was fully aware he was not a suitable person to possess firearms for

---

[7] The Supreme Court in recent years has carefully distinguished between statutory requirements that Congress intended to be jurisdictional and those that are merely procedural, "claim-processing rules." See, e.g., Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012). Because the court finds that Boles has exhausted his administrative remedies, it need not determine whether this distinction makes a difference in this case.

the reasons noted above. Because Mr. Porter was subject to a court restraining order, both federal and state law prohibited the return of the weapons to him, so there was no choice or discretion involved in Ms. Kritz' [sic] decision whether to return the firearms to Mr. Porter. She should have refused to do so.

As a result of Ms. Kritz' negligent entrustment of an AK-47 firearm to Mr. Porter, the claimant Billy Boles was shot three times and suffered serious injuries. In addition, two of Mr. Boles' personal vehicles were damaged in the shooting, as outlined in Section 9 of the Claim Form. The place of the shooting was Riverview Boulevard in Lexington, North Carolina. However, the negligent entrustment of the firearms occurred in Norfolk, Virginia.

(Doc. 7—4 at 1, 3.) Boles argues that he properly presented his claim because the Government was adequately put on notice of its substance. (Doc. 15 at 2–4.)

Boles is correct. "A claim is 'presented' — satisfying the requirement of filing an administrative claim — if it gives the [G]overnment adequate notice to properly investigate the underlying incident and places a 'sum certain' on the claim's value." White v. United States, 907 F. Supp. 2d 703, 705 (D.S.C. 2012) (citing Ahmed v. United States, 30 F.3d 514, 516–17 (4th Cir. 1994)). The procedure for presenting a claim is set out in 28 C.F.R. § 14.2, which provides in relevant part that "a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for

injury to or death alleged to have occurred by reason of the incident." Boles' administrative claim satisfied the procedure set forth in the regulation; he identified the incident in which he was injured and demanded a sum certain in damages for property damage and personal injury. (Doc. 7-4 at 1, 3.) So long as the administrative claim "provides sufficient notice to enable investigation and settlement," a complaint based upon it will not be jurisdictionally barred. White, 907 F. Supp. 2d at 705 (quoting Owen v. United States, 307 F. Supp. 2d 661, 667 (E.D. Pa. 2004)); see also Drew, 217 F.3d at 203 ("We do not require the claimant to provide the agency with a preview of his or her lawsuit by reciting every possible theory of recovery . . . or every factual detail that might be relevant. . . . In short, the amount of information required is minimal." (quoting Burchfield v. United States, 168 F.3d 1252, 1255 (11th Cir. 1999) (internal quotation marks omitted))). Boles' newly proposed claims all sound in negligence and are based on the events set out in Boles' administrative claim. Thus, the Government cannot claim it did not receive proper notice, and the court rejects the Government's argument that any claim raised in Boles' proposed amended complaint is barred by section 2675(a).

### 3. Negligence claims

The Government argues that Boles' proposed amended

complaint fails to state a claim for negligence under Virginia law.  The FTCA provides that the United States may be liable for the negligence of its employees if, were the Government a private person, "it would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Because the alleged negligence occurred at the Armory in Virginia, that State's law applies.[8]

In order to establish a claim for negligence in Virginia, Boles must show: (1) the existence of a legal duty; (2) a breach of that duty; and (3) proximate causation resulting in damage.  McGuire v. Hodges, 639 S.E.2d 284, 288 (Va. 2007).  Whether the defendant owes a legal duty to the plaintiff is a question of law.  Burns v. Gagnon, 727 S.E.2d 634, 643 (Va. 2012).

The Government contends it owed Boles no duty and that, even if it did, the Coast Guard employees' actions were not, as a matter of law, the proximate cause of Boles' injuries.  In response, Boles asserts several theories for governmental liability: first, that the Coast Guard, through its employees, assumed a duty of care with respect to Porter's firearms once it gratuitously took possession of them and breached that duty in

---

[8] For the purposes relevant here, the court looks first to the decisions of the Virginia Supreme Court.  The Virginia Court of Appeals has limited jurisdiction, such that appeals in civil cases generally proceed directly to the Supreme Court.  See Va. Code Ann. § 17.1-405.

returning them to Porter (Counts I and II); and second, that the Government is liable under Virginia's negligence *per se* doctrine (Counts III, IV, and V).[9]  As to proximate cause, Boles contends that is a fact question that should not be resolved on the pleadings.

### a.    Assumption of a duty

In Count I of the proposed amended complaint, Boles alleges that Kritz - who assisted Porter in storing his firearms at the Armory, voluntarily attended Porter's legal proceedings, and was aware of the entry of the protective order - "assumed a duty to otherwise prevent the return of the firearms" to him.  (Doc. 11-1 ¶ 40.)  In Count II of the proposed amended complaint, Boles alleges that other Coast Guard employees "assumed a duty to act with reasonable care regarding the safety and security of Terry Porter's firearms" when they accepted them into their care, custody, and control.  (Id. ¶ 46.)  Both counts allege breaches of the assumed duty in numerous ways, including failure to properly monitor the security of the firearms, failure to prevent their return to Porter, and failure to warn Mrs. Porter and others once the firearms were returned.  (Id. ¶¶ 42, 47.)

In Virginia, while there is no general duty to control the

---

[9] The court has previously dismissed Boles' claim that the employer-employee relationship between Porter and the Government was a "special relationship" giving rise to a duty (Count VI).

conduct of third persons, <u>Marshall v. Winston</u>, 389 S.E.2d 902, 904 (Va. 1990), courts have recognized the doctrine of assumption of a duty, <u>Burns</u>, 727 S.E.2d at 643. Under that doctrine, sometimes referred to as the "Good Samaritan rule," "'one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.'" <u>Id.</u> (quoting <u>Kellermann</u>, 684 S.E.2d at 791). Frequently, the doctrine is applied to a claim by the person to whom the assuming party directly agreed to render services. <u>See, e.g.</u>, <u>Kellermann</u>, 684 S.E.2d at 791–92 (finding that a mother who agreed to watch her daughter's friend assumed a duty to the friend and her parents to protect the friend, who was later killed as a result of being permitted to ride in a car driven by a reckless teenager).

The doctrine of assumed duty has been extended by Virginia courts to protect certain third parties. Virginia courts have applied the Restatement (Second) of Torts § 324A, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Burns, 727 S.E.2d at 644 (quoting Restatement (Second) of Torts § 324A (1965)); see also Fleming v. United States, 69 F. Supp. 2d 837, 842 (W.D. Va. 1999) (denying motion to dismiss FTCA claim under common law "Good Samaritan" rule and section 324A). Here, Boles predicates a duty on the first basis (increased risk of harm), alleging that Kritz encouraged Porter to store his firearms at the Armory because she recognized the danger posed if he continued to possess them, and that the release of the firearms by the Coast Guard employees under the circumstances (e.g., knowing that a court declared Porter ineligible to possess them by virtue of a prior domestic violence episode involving a firearm) increased the risk of harm to third parties like Boles.

The Government contends that the Coast Guard could not have assumed any duty to Boles because he was not a foreseeable third party victim who could reasonably be expected to be harmed ten months after release of the firearms. (Doc. 14 at 17–18.) As noted by the Government, the doctrine of assumption of a duty does not indefinitely expand the class of persons to whom the duty is owed. "[T]here is no such thing as negligence in the abstract, or in general. . . . Negligence must be in relation

25

to some person." Dudley, 401 S.E.2d at 882 (quoting Marshall, 389 S.E.2d at 905). It is "[t]he extent of the undertaking [that] defines the scope of a defendant's duty." Kellermann, 684 S.E.2d at 801 (Kinser, J., concurring in part and dissenting in part) (citing authorities). Virginia courts have recognized liability to third persons where they are in a class of persons who could foreseeably be injured. See Dudley, 401 S.E.2d at 883 (holding that halfway house on contract with government owed duty to plaintiff who was attacked by a criminal serving his sentence who escaped, because the victim was "within a given area of danger" even though "not foreseeably at risk as an individual"); cf. Kimble v. Carey, 691 S.E.2d 790, 793–94 (Va. 2010) (recognizing that Virginia applies the "rescue doctrine," which allows injured rescuers to recover from the tortfeasor who necessitated the rescue, unless "the rescuer has acted rashly or recklessly in disregard of his or her own safety").

In this case, Boles alleges that the Coast Guard, through its employees, knew of Porter's mental health issues and, because of that, encouraged him to store his firearms at the Armory for his safety and that of others. (Doc. 11-1 ¶ 7.) Boles alleges further that Kritz monitored Porter's domestic situation and even attended the hearing during which the court entered a domestic violence protective order prohibiting Porter from contacting Mrs. Porter or possessing any firearm for two

years.  Nevertheless, Boles alleges, the Coast Guard returned Porter's firearms to him approximately two months after the hearing.  At this pleading stage, the court cannot say that, as a matter of law, Boles was not in a class of persons who could be harmed by Porter based on the Coast Guard employees' conduct, nor can the court say that upon return of Porter's firearms it was not foreseeable as a matter of law that Porter would seek to attack his estranged wife and anyone who may come to her aid when he did.  The burden rests with the Government at this stage to show that Boles' assumption of a duty claim is not at least plausible.  This is a lesser showing than one of actual merit. Because the Government has not carried its burden, Boles' assumption of duty claims (Counts I and II) may proceed.[10]

### b.   Negligence *per se*

Counts III, IV, and V of the proposed amended complaint are premised on the doctrine of negligence *per se*.  Virginia law recognizes negligence *per se* where (1) the defendant violated a statute enacted for the public safety; (2) the plaintiff belongs to "the class of persons for whose benefit the statute was

_____

[10] The Government has not raised, and thus the court does not reach, the issue whether the scope of the duty owed by the Government and its employees should be limited by Virginia's "public duty" doctrine. See, e.g., Marshall, 389 S.E.2d at 905 ("[I]n negligence claims against a public official, a distinction must be drawn between a public duty owed by the official to the citizenry at large and a special duty owed to a specific identifiable person or class of persons.").

enacted" and "the harm that occurred was of the type against which the statute was designed to protect"; and (3) the statutory violation was a proximate cause of the plaintiff's injury. <u>Kaltman v. All Am. Pest Control, Inc.</u>, 706 S.E.2d 864, 872 (Va. 2011). Under the doctrine, the adoption of a legislative enactment can be recognized as the standard of conduct of a reasonable person. <u>Id.</u> The first two elements are questions of law, while proximate cause is generally an issue for the factfinder. <u>Id.</u>

The Government first contends that amendment of the complaint to add any negligence *per se* claim would be futile because such a claim constitutes strict liability, which is not cognizable under the FTCA. Next, the Government proffers three arguments in opposition to Boles' negligence *per se* claims under the Act: (1) an FTCA action cannot be predicated on a State's negligence *per se* law alone; (2) there is no private right of action under section 922 of the Act; and (3) federal law (i.e., section 922) cannot be the basis for a duty under the FTCA. Finally, the Government argues that a negligence *per se* claim cannot be premised on Va. Code Ann. § 18.2-56.1(A) because the statute does not encompass the conduct complained of here.

### i. Strict liability

The Government first argues that Boles' negligence *per se* claims are barred because the FTCA does not allow recovery on a

"strict liability" theory.  While it is true that the United States may not be sued on a theory of strict or absolute liability, see Laird v. Nelms, 406 U.S. 797 (1972), the Government cites no authority that either section 922 of the Act or Va. Code Ann. § 18.2-56.1(A) constitutes such.

As an initial matter and contrary to the Government's assertions, negligence *per se* liability is not strict liability. See, e.g., O'Donnell v. Elgin, J & E Ry. Co., 338 U.S. 384, 389–91 (1949) (distinguishing strict liability from negligence *per se* and the doctrine of *res ipsa loquitur*); Brady v. Terminal R.R. Ass'n of St. Louis, 303 U.S. 10, 15 (1938) (in contrasting the standard under absolute liability, stating: "The statutory liability is not based upon the carrier's negligence.  The duty imposed is an absolute one, and the carrier is not excused by any showing of care, however assiduous."); Seim v. Garavalia, 306 N.W.2d 806, 811 (Minn. 1981) ("[V]iolation of a strict liability statute, by itself, renders the violator liable without any showing of fault.  In the case of negligence *per se*, violation of the statute is a form of fault that may evidence negligence."). A host of cases have allowed negligence *per se* claims under the FTCA.  See, e.g., In re Sabin Oral Polio Vaccine Prods. Liab. Litig., 984 F.2d 124, 127-28 (4th Cir. 1993) (affirming FTCA judgment based on negligence *per se* claim under Florida law); Quechan Indian Tribe v. United States, 535

F. Supp. 2d 1072, 1106-07 (S.D. Cal. 2008) (denying Government's motion to dismiss negligence *per se* claim based on California law).

More specifically here, the Government fails to show that either statute requires Boles to show less than at least negligence by the Coast Guard employees. For example, the Act provides: "[i]t shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person *knowing or having reasonable cause to believe* that such person [meets certain conditions]." 18 U.S.C. § 922(d) (emphasis added). Similarly, the Virginia statute, Va. Code Ann. § 18.2-56.1(A), prohibits *reckless* conduct.[11]

Thus, the Government's contention that amendment of the complaint should be denied for this reason lacks merit.

### ii. 18 U.S.C. § 922

In Counts III and IV of the proposed amended complaint, Boles asserts liability of Coast Guard employees premised on two subsections of section 922(d) of the Act, a federal criminal law. The statute provides in relevant part:

> It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—
> . . .

---

[11] The court does not rely on that basis alone because, as noted <u>infra</u>, that statute was never intended to apply to the facts alleged here.

(4) has been adjudicated as a mental defective or
has been committed to any mental institution;

. . .

(8) is subject to a court order that restrains
such person from harassing, stalking, or
threatening an intimate partner of such person or
child of such intimate partner or person, or
engaging in other conduct that would place an
intimate partner in reasonable fear of bodily
injury to the partner or child.

18 U.S.C. § 922(d)(4), (8). For purposes of the Government's
motion, the court will assume, as alleged, that the federal
employees who returned Porter's firearms to him knew or had
reasonable cause to believe that he was under a protective order
and had previously been committed to a mental institution.[12]
Whether the statute was violated is a question of fact. See
Fireman's Ins. Co. of Wash. D.C. v. Bayou Props., LLC, 78 Va.
Cir. 237, 2009 WL 7326379, at *2 (2009) (citing Thomas v.
Settle, 439 S.E.2d 360, 363 (Va. 1994)).

The Government contends that Boles' negligence *per se*
claims fail because they cannot be based merely on the fact that

---

[12] Boles alleges "upon information and belief" that "the term
'committed' as used in the statute may refer to voluntary or
involuntary commitment to a mental hospital." (Doc. 11-1 ¶ 58.) Of
course, the scope of Act is a legal issue that cannot be alleged on
information and belief. The parties have not addressed whether as a
matter of law Porter's commitment for mental health treatment would
fall within or without section 922(d)(4), and there may be some
question about that. See, e.g., United States v. Dorsch, 363 F.3d
784, 785 (8th Cir. 2004) (holding that voluntary commitment is not
within the purview of section 922(g)(4)).

Virginia recognizes the doctrine of negligence *per se*. If that were the only basis of Boles' claims, there would be no dispute that the Government is correct. See, e.g., Johnson v. Sawyer, 47 F.3d 716, 728-29 (5th Cir. 1995) ("[I]n FTCA cases courts have generally refused to find the necessary state law duty in an assertedly violated federal statute or regulation merely because the law of the relevant state included a general doctrine of negligence *per se*." (citing Art Metal-U.S.A., Inc. v. United States, 753 F.2d 1151, 1158 (D.C. Cir. 1985)). But, as demonstrated below, Boles alleges more than that; he alleges that the claims are cognizable under Virginia's negligence *per se* law.

The Government argues further that Boles' claims fail because there is no private right of action under section 922 to permit a civil claim under the FTCA. But the Government's argument misses the point. The appropriate question is whether the statute meets the criteria for application of the State's negligence *per se* doctrine. By its very operation, Virginia's doctrine of negligence *per se* can impose civil liability for violation of a criminal statute containing no express or implied private right of action. See, e.g., Schlimmer v. Poverty Hunt Club, 597 S.E.2d 43, 46 (Va. 2004) (cause of action for negligence *per se* possible for violation of criminal law prohibiting reckless handling of firearms). As noted earlier,

Virginia permits a statute to be the basis of a negligence *per se* claim if it was enacted for the purpose of public safety, the plaintiff belongs to the class of persons for whom its benefits were enacted and the harm that occurred was of the type against which the statute was designed to protect, and the violation was a proximate cause of the plaintiff's injury. <u>Kaltman</u>, 706 S.E.2d at 872. As Boles notes, at least some courts have characterized section 922 as a public safety statute designed to prevent shooting deaths. <u>See, e.g.</u>, <u>King v. Story's, Inc.</u>, 54 F.3d 696, 697 (11th Cir. 1995) (vacating district court's award of summary judgment in favor of defendant who allegedly sold the rifle used to kill the plaintiff to a convicted felon in violation of section 922(d)(1), and confirming that "[t]he trial court [properly] recognized that this plaintiff . . . is a member of the class of persons Congress intended to protect by enacting the Gun Control Act; that the injuries were of the type contemplated by the Act; and that the sale was made in violation of the Act").[13]

---

[13] <u>See also</u> <u>Martin v. Schroeder</u>, 105 P.3d 577, 582 (Ariz. Ct. App. 2005) (concluding that "[t]he Act is at least in part a public safety statute . . . designed to keep firearms out of the possession of those persons not legally entitled to possess them because of age, criminal background, or incompetency") (citing <u>Huddleston v. United States</u>, 415 U.S. 814, 824 (1974)); <u>Coker v. Wal-Mart Stores, Inc.</u>, 642 So. 2d 774, 777 (Fla. Dist. Ct. App. 1994) (concluding that the "principal purpose" of the Act was "to prevent those deemed too dangerous or irresponsible due to age, criminal background, or incompetency from obtaining firearms and ammunition").

Even the cases cited by the Government actually undermine its argument. For example, in <u>Decker v. Gibson Prods. Co. of Albany, Inc.</u>, 679 F.2d 212 (11th Cir. 1982), upon which the Government relies, the Eleventh Circuit reversed the district court's grant of summary judgment to the defendant. The plaintiffs - children and mother of a murder victim – had sued the defendant for negligence in selling a pistol to the shooter, a convicted felon. <u>Id.</u> at 213–14. Although the district court found that section 922(d) of the Act did not create a private cause of action, the Eleventh Circuit stressed that the plaintiffs were not asserting such; rather, they claimed that section 922(d) set a standard against which the defendant's conduct should be measured for determining negligence *per se* under Georgia law. <u>Id.</u> at 214–15. Boles alleges nothing more here. Thus, the Government's argument on this point, not being properly developed, will not carry the day.

The Government finally contends that even though Virginia recognizes negligence *per se*, the FTCA cannot support a claim under the doctrine if the required duty arises from federal law, citing several cases. <u>See, e.g.</u>, <u>Delta Sav. Bank v. United States</u>, 265 F.3d 1017, 1026 (9th Cir. 2001) ("To bring suit under the FTCA based on negligence *per se*, a duty must be identified, and this duty cannot spring from a federal law. The duty must arise from state statutory or decisional law, and must

impose on the defendants a duty to refrain from committing the sort of wrong alleged here."); Klepper v. City of Milford, 825 F.2d 1440, 1448 (10th Cir. 1987) ("[W]here a negligence claim is based on a violation of a federal statute or regulation, no claim will lie under the FTCA in the absence of some other duty under the applicable state law."). Conspicuously absent from the Government's argument is any citation to Fourth Circuit authority.

In Florida Auto Auction of Orlando, Inc. v. United States, the Fourth Circuit stated that failure to abide by a federal statute or regulation may give rise to liability under the FTCA so long as "the alleged breach of duty is tortious under state law," or "the duty imposed by federal law is similar or analogous to a duty imposed by state law." 74 F.3d 498, 502 (4th Cir. 1996) (quoting Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 969 (4th Cir. 1992)). In reaching this conclusion, the court rejected the Government's argument to the contrary, which appears to be the argument the Government makes in the present case:

> In its brief to this court, the Government insisted that breach of any duty imposed by 19 C.F.R. § 192.2(b) could not give rise to a state-law claim of negligence. "[B]ecause federal regulations owe their force and effect to federal and not state law," the Government contended, "they cannot serve as the basis for liability under the FTCA." The Government's argument (an argument from which it attempted to

distance itself during oral arguments) is wholly
without merit.

74 F.3d at 502 n.2 (citation omitted).

Boles contends that a violation of section 922 is
sufficient to create a cause of action for negligence *per se* in
Virginia. He appears to be relying on both bases under <u>Florida
Auto Auction</u>: that breach of the duty imposed by section 922
would be recognized by Virginia as "tortious under state law"
and that the duty is "similar or analogous to" Va. Code Ann.
§ 18.2-308.2:1, which makes it a felony for anyone, with intent,
to "give[] . . . any firearm to any person he knows is
prohibited from possessing or transporting a firearm." The
Government has not responded to either argument. Nor has it
addressed how its contentions are consistent with the Fourth
Circuit's decision in <u>Sabin Oral Polio Vaccine</u>, which affirmed a
judgment under the FTCA based on Florida's negligence *per se* law
predicated on the violation of a federal regulation. 984 F.2d
at 127–28.

Neither party has adequately addressed whether Virginia
would recognize Boles' negligence *per se* claim predicated on
section 922(d).[14] As a federal court applying State law, this

---

[14] To the extent the parties have addressed the issue at all, they have
couched their arguments in terms of whether the Act provides a private
right of action. As discussed above, however, no private right of
action is necessary to maintain a negligence *per se* claim in Virginia.
<u>See, e.g.</u>, <u>Schlimmer</u>, 597 S.E.2d at 46. This appears to be in

court must predict how the Virginia Supreme Court would rule if confronted with the disputed question.  See Ellis v. Grant Thornton LLP, 530 F.3d 280, 287 (4th Cir. 2008).  There is some authority, albeit in *dicta*, from Virginia courts that expressly contemplates imposing negligence *per se* liability for a violation of federal law.  See, e.g., Halterman v. Radisson Hotel Corp., 523 S.E.2d 823, 825-26 (Va. 2000) (affirming dismissal of plaintiff's state law claim for negligence *per se* premised on a violation of a regulation issued pursuant to the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq., because of a lack of evidence the defendant violated it); see also Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002) ("well considered *dicta*" may be considered in the course of predicting how a state's highest court would rule on an unclear issue of state law).[15]  By

_____

contrast to other jurisdictions, which indeed require a private right of action to recover on a theory of negligence *per se*.  See, e.g., Estate of Pemberton v. John's Sports Ctr., Inc., 135 P.3d 174, 187 (Kan. Ct. App. 2006) ("[To recover for negligence *per se*, plaintiffs] must establish that the statute explicitly or implicitly established a private cause of action.").

[15]  Where the question has not been squarely answered in the jurisdiction at issue, the court is authorized to examine what other jurisdictions have done.  See Teletronics Int'l, Inc. v. CNA Ins. Co./Trans. Ins. Co., 120 F. App'x 440, 444 (4th Cir. 2005) (citing Lexington Ins. Co. v. Rugg & Knopp, Inc., 165 F.3d 1087, 1092 (7th Cir. 1999)).  The court's own preliminary research reveals that State courts have split on whether a violation of section 922 may lead to liability under negligence *per se*.  Some jurisdictions have explicitly required a private right of action to pursue recovery under a negligence *per se* theory, or held that section 922 did not create a

the same token, there appears to be some authority to the

contrary. _See_ _Williamson v. Old Brogue, Inc._, 350 S.E.2d 621,

624–25 (Va. 1986).[16]

---

duty of care in a negligence action. _See, e.g._, _Estate of Pemberton_,
135 P.3d at 180–83 (requiring a private right of action to recover on
negligence _per se_ theory, then collecting cases on both sides of the
issue and determining that section 922(d) does not create a private
right of action and cannot be a basis of a negligence _per se_ claim in
Kansas); _Lewis v. Jamesway Corp._, 737 N.Y.S.2d 657, 659 (N.Y. App.
Div. 2002) (holding that section 922 did not create a private cause of
action or a duty of care of a reasonable person, and therefore that
the plaintiff could not recover under a negligence theory); _Hulsman v.
Hemmeter Dev. Corp._, 647 P.2d 713, 720 (Haw. 1982) (finding that
section 922 does not create a duty on a seller of a firearm in a
negligence action, nor does it create a private right of action).
Other courts have allowed plaintiffs to recover upon a showing that
the defendant violated the Act. _See, e.g._, _Martin_, 105 P.3d at 582–83
(collecting cases and determining that a violation of
section 922(d)(3) by selling a gun to someone known to be addicted to
a controlled substance could constitute negligence _per se_ under
Arizona law); _Knight v. Wal-Mart Stores, Inc._, 889 F. Supp. 1532, 1536
(S.D. Ga. 1995) (applying Georgia law) (citing _Decker_, 679 F.2d at
215, and _West v. Mache of Cochran, Inc._, 370 S.E.2d 169, 171 (Ga. Ct.
App. 1988)) ("[Section 922(d)(4)] criminalizes a certain act, and on
the civil side, courts have decided that failing to meet the standard
constitutes negligence _per se_."); _Coker_, 642 So. 2d at 778–79
(allegation in complaint that defendant negligently sold ammunition to
a minor in violation of section 922(b)(1) sufficient to survive a
motion to dismiss in negligence _per se_ claim).

[16] In _Williamson_, where the Virginia Supreme Court declined to permit a
state statute that criminalized providing alcohol to an intoxicated
person to serve as a basis for a negligence _per se_ claim, the court
reasoned that "a statute may define the standard of care to be
exercised where there is an underlying common-law duty, but the
doctrine of negligence _per se_ does not create a cause of action where
none otherwise exists." _Id._ at 624. Although recognizing that the
legislature had not enacted so-called "dram shop" liability — and,
therefore, that no right of action existed under the criminal statute
— the court proceeded to frame the issue in the case. "[T]he crucial
question," the court stated, "is whether a person injured by an
intoxicated customer of a vendor of intoxicants is a member of the
class for whose benefit [the statute] was enacted." _Id._ Because the
court determined that the statute was not enacted for public safety,
the plaintiff's negligence _per se_ claim failed as a matter of law.
_Id._ at 625.

Ultimately, in opposing the motion to amend, the Government bears the burden of demonstrating futility. At this point, it has not done so. In light of the authorities identified and given the state of the briefing on what appears to be a question of first impression under Virginia law, the better course is for the court to defer further consideration of the issue until the parties have adequately addressed it. <u>See</u> Fed. R. Civ. P. 12(i). Therefore, Boles' motion to amend the complaint to add Counts III and IV will be granted, subject to the parties' right to more adequately address the viability of the claims under Virginia law at a later time.

### iii. Va. Code Ann. § 18.2-56.1(A)

In Count V, Boles alleges that Coast Guard employees violated Va. Code Ann. § 18.2-56.1(A). The statute provides: "[i]t shall be unlawful for any person to handle recklessly any firearm so as to endanger the life, limb or property of any person." Violation of the statute is a misdemeanor under Virginia law.

Both parties cite <u>Schlimmer</u>, a case where the plaintiff was accidentally shot by a fellow hunter while hunting. 597 S.E.2d at 45. In the preceding criminal case, Nolan Cofield, the shooter, pleaded guilty to the reckless handling of a firearm in violation of the statute. <u>Id.</u> In the subsequent civil case, the court held that the trial court erred by refusing to

instruct the jury on negligence *per se* because section 18.2–56.1(A) was a public safety statute, the plaintiff hunter was in a class of persons intended to benefit from its protection, and the gunshot wound was the type of injury the statute was intended to prevent. Id. at 46.

The Government argues that Schlimmer is not applicable because "the decision does not focus on the actions of the hunt club or any actions concerning the storage, return, or provision of firearms." (Doc. 13 at 8.) In the present case, the Government contends, it was Porter who was reckless, and the statute applies, if at all, to him. Boles, in contrast, relies on Bailey v. Commonwealth, where the court held that the reach of section 18.2-56.1(A) "is not limited to hunters" but applies to friends who were "horseplaying" with a pistol. 362 S.E.2d 750, 751 (Va. Ct. App. 1987). However, Boles cites no Virginia case applying the statute to firearm vendors or any other analogous persons.

The court concludes that section 18.2–56.1(A) is not applicable to the facts of this case. Based on the text of the statute, it applies to gun accidents such as those occurring during hunting and other similar activities. Nothing in the text may be read to impose criminal liability on a third party who did not use the firearm in a reckless manner, and the Virginia courts have never applied it in that manner. Thus,

Boles' motion to amend the complaint to add Count V will be denied as futile.

### c.   Proximate cause

The Government contends finally that, even assuming it owed a duty to Boles, it was "Porter's illegal use of a firearm, not [their] release from the Armory ten months earlier" which was the cause of Boles' injury.  (Doc. 14 at 20.)  The Government argues that a finding of causal connection in this case would represent a significant extension of liability under Virginia law, citing the Virginia Supreme Court's rejection of "dram shop" liability.  See <u>Williamson</u>, 350 S.E.2d at 623 (finding that "the common law considers the act of selling the intoxicating beverage as too remote to be a proximate cause of an injury resulting from the negligent conduct of the purchaser of the drink.").  The Government likens the transfer of the firearms in this case to the sale of a beverage in "dram shop" cases and urges that Porter's intentional acts were the true cause of Boles' injury.

Boles responds that under Virginia law, in order to absolve the defendant of negligence, an intervening act "must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury." <u>Kellermann</u>, 684 S.E.2d at 793–94 (quoting <u>Atkinson v. Scheer</u>,

508 S.E.2d 68, 71-72 (Va. 1998)).  Boles contends that such a determination cannot be made on the face of the complaint.

"The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the event, and without which the event would not have occurred."  Thomas, 439 S.E.2d at 363.  Generally, proximate cause in negligence cases is an issue for the factfinder.  "It is only when reasonable men may draw but one conclusion from the facts that [proximate cause] become[s] [a] question[] of law for the court to decide."  Beasley v. Bosschermuller, 143 S.E.2d 881, 886 (Va. 1965); Thomas, 439 S.E.2d at 363.  Furthermore, in Virginia, "[a]n intervening act which is reasonably foreseeable cannot be relied upon as breaking the chain of causal connection between an original act of negligence and subsequent injury."  Gallimore v. Commonwealth, 436 S.E.2d 421, 425 (Va. 1993) (quoting Delawder v. Commonwealth, 196 S.E.2d 913, 195 (Va. 1973)).

The court cannot say at this early stage that Boles' allegations of proximate cause are not plausible.  For a defendant to be held liable, it "need not have anticipated or foreseen the precise injury sustained, but it is sufficient if an ordinarily careful and prudent person ought, under the same or similar circumstances, to have anticipated that an injury might probably [not possibly] result from the negligent acts."

_Norfolk Shipbuilding & Drydock Co. v. Scovel_, 397 S.E.2d 884, 886 (Va. 1990) (quoting _New Bay Shore Corp. v. Lewis_, 69 S.E.2d 320, 326 (Va. 1952)).  Moreover, "[t]here may, of course, be more than one proximate cause of an event.  And not every intervening cause is a superseding cause." _Panousos v. Allen_, 425 S.E.2d 496, 499 (Va. 1993).  While Porter's intentional conduct was admittedly a proximate cause of Boles' injuries, the alleged negligence of Coast Guard employees could _also_ be a proximate cause, for without their acts the injury would not have occurred.  _Cf._ _Fulcher v. Va. Elec. & Power Co._, 60 Va. Cir. 199, 2002 WL 32073956 (2002) (absolving defendant from negligence liability for failing to mark power line where plaintiff discovered the unmarked line and then intentionally severed it); _Underwood v. United States_, 356 F.2d 92, 99-100 (5th Cir. 1966) (reversing judgment for the Government because the court had "no doubt" that negligently giving a mentally ill serviceman with a history of domestic abuse access to a firearm, which he used to shoot his wife, was proximately connected to wife's death under FTCA).

_Williamson_ suggests that the Virginia Supreme Court takes a cautious approach toward the recognition of liability in cases where the damage results from the intentional act of a third party.  However, there are distinctions between the sale of alcohol to a patron and the allegations of this case that the

43

parties have not fully explored.  For example, Boles alleges that Kritz and others had specific knowledge that Porter would be a danger to his wife if he was allowed to have access to firearms.  This knowledge allegedly included the two-year protective order, which is some evidence that Porter was deemed dangerous during the time period the Armory released his firearms to him.  Whether proximate cause fails as a matter of law should be resolved on a more developed record.

Consequently, the Government's effort to deny amendment of the complaint on the grounds of futility based on proximate cause will be denied.

### C.   Motion to Strike Jury Demand

Finally, the Government moves to strike Boles' demand for a jury trial.  (Doc. 16.)  It is well-settled that there is no right to a jury trial in an action under the FTCA.  See Carlson v. Green, 446 U.S. 14, 22 (1980); 28 U.S.C. § 2402 (providing that with the exception of suits to recover wrongfully-collected taxes or assessments under section 1346(a)(1), "any action against the United States under section 1346 shall be tried by the court without a jury").  Therefore, the Government's motion to strike Boles' jury demand will be granted.

### III. CONCLUSION

For the reasons stated, the court finds that it has subject-matter jurisdiction over Counts I through V of the

proposed amended complaint and that Counts I through IV may be added as set forth in Boles' proposed amended complaint.

IT IS THEREFORE ORDERED that Boles' motion to amend the complaint (Doc. 11) is GRANTED insofar as he requests to add his claims for negligence based on assumed duty under Virginia law (Counts I and II) and negligence *per se* under Virginia law and 18 U.S.C. § 922(d)(4) and (8) (Counts III and IV), as set forth in the proposed amended complaint. As to proposed Counts V and VI, the motion to amend is DENIED on the grounds of futility.

IT IS FURTHER ORDERED that the Government's motion to dismiss, or in the alternative motion for summary judgment (Doc. 6), on grounds of subject-matter jurisdiction is treated as a motion to dismiss at this stage and is GRANTED as to Count VI of the proposed amended complaint; it is otherwise DENIED.

IT IS FURTHER ORDERED that Boles has ten (10) days from the date of this Memorandum Opinion and Order to file and serve on the Government an amended complaint that conforms to the rulings herein. The Government shall have twenty-one (21) days within which to serve its response.

/s/   Thomas D. Schroeder
United States District Judge

February 25, 2014