IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BILLY LEE BOLES, JR., | ) | |
| | ) | |
| Plaintiff, | ) | 1:13CV00489 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT UNITED STATES' BRIEF IN SUPPORT OF ITS MOTION TO STRIKE EXPERT REPORTS AND EXCLUDE TESTIMONY

NOW COMES the United States of America ("United States"), by and through Ripley Rand, United States Attorney for the Middle District of North Carolina, and files this brief in support of its motion to strike Plaintiff's four untimely expert reports and to exclude Plaintiff's proposed experts from testifying.

### INTRODUCTION

This Court takes its scheduling orders seriously, making such pronouncements over the years as "the scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril," and "a scheduling order represents the critical path chosen by the Court and the parties to fulfill the mandate of Federal Rule of Civil Procedure 1 in securing the just, speedy, and inexpensive determination of every action." *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (quotation marks omitted); *Alston v. Becton, Dickinson and Co.*, 2014 WL 338804, at *3 (M.D.N.C. Jan. 30, 2014) (quotation marks and brackets omitted).

Plaintiff, however, has ignored the Court's scheduling order in this case, serving four untimely expert reports that completely change the nature of the case. Plaintiff purportedly offers these reports "to contradict or rebut" the United States' expert reports, but that is not what they do. Indeed, other than one passing reference, none of the four "rebuttal" reports even mention the United States' experts or their reports. For the reasons stated below, the Court should strike Plaintiff's untimely expert reports and exclude his proposed experts from testifying at trial.

## STATEMENT OF THE CASE

Plaintiff initiated this action 20 months ago, on June 18, 2013. (Dkt. 1.) The United States moved to dismiss the complaint, prompting Plaintiff to file a motion to amend. (Dkt. 6, 11.) On February 25, 2014, the Court granted and denied both motions in part, allowing Plaintiff to proceed with Counts I–IV of his amended complaint.

On May 14, 2014, the parties filed a joint report pursuant to Federal Rule of Civil Procedure 26(f) in which they "agree[d] and jointly propose[d] to the Court the following discovery plan," including, among other things, the following expert report deadlines:

- From Plaintiffs by September 1, 2014.
- From Defendant by November 15, 2014.
- Rebuttal Report from Plaintiff by December 30, 2014.

(Joint Rule 26(f) Report, Dkt. 22 at 1, 2.)

On May 19, 2014, the Court adopted the parties' joint report with two clarifications, the second of which stated: "the expert-related deadlines in Paragraph 3(a)

of 22 Joint Report shall apply to all expert disclosures required under Federal Rules of Civil Procedure 26(a)(2)(A)-(C), not just reports of so-called retained experts."

Plaintiff did not disclose any affirmative expert witnesses and did not provide any expert reports by his deadline of September 1, 2014. The United States, out of an abundance of caution, timely served Plaintiff with the reports of three retained experts: an economist, a vocational expert, and an orthopaedic surgeon.[1] On December 30, 2014, Plaintiff served the United States with the reports of four experts: a psychiatrist, a vocational expert, an economist, and an orthopaedic surgeon.[2] Plaintiff purports to offer these reports "to contradict or rebut" the reports of the United States, but as discussed below, they are in reality untimely affirmative reports.

Discovery closes on March 15, 2015. Dispositive motions are due on April 15, 2015, and a bench trial has been set for October 5, 2015.

## STATEMENT OF THE FACTS

For general factual background, the United States incorporates by reference its statement of facts from its motion to dismiss. (Dkt. 7 at 2-3.)

The United States deposed Plaintiff on October 28, 2014. During the course of his four-hour deposition, Plaintiff responded to the United States' questions by saying "I'm not for sure" sixty-four times, "I can't remember" fifty-nine times, "I don't remember" forty-six times, and "I don't know" twelve times. Critically, the United States asked Plaintiff, "Has a doctor diagnosed you with any type of mental health issue related to the

---

[1] The United States' expert designations and expert reports are attached hereto as **Exhibits A-D**.
[2] Plaintiff's expert designations and expert reports are attached hereto as **Exhibits E-I**.

- 3 -

incident?" (Pl.'s Dep., attached hereto as **Exhibit J**, at 118:16-17.) In one of the rare instances in which Plaintiff responded with certainty, he stated, "No." (*Id*. at 118:18.)

### STATEMENT OF THE QUESTIONS PRESENTED

Should Plaintiff's four expert reports be stricken as untimely affirmative reports, and should Plaintiff's proposed experts be excluded from testifying at trial?

### ARGUMENT

#### I. Standard

> [Where there is] a court approved discovery plan . . . , the Court looks to Rule 16(f) to determine violations for not disclosing expert reports at the time required under the scheduling order, and to determine sanctions. At this stage, the question is not whether the defendants have been prejudiced, but whether plaintiff has shown good cause for its failure to timely disclose. Under Rule 16(f), the Court may impose the full range of sanctions, including precluding the expert's testimony.

*Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 309 (M.D.N.C. 2002) (citations omitted).

#### II. Plaintiff's Four Expert Reports Are Untimely.

There is no question that Plaintiff's four expert reports—if they are affirmative expert reports and not the rebuttal reports they claim to be—are untimely, having been served nearly four months after the court-ordered deadline. Even a cursory examination of the reports reveals that they are not true rebuttals and, indeed, that they do not even mention the United States' experts or their reports.[3]

An expert rebuttal report is one that "is intended solely to contradict or rebut

---

[3] The lone exception is one statement from Dr. Weisler's report, in which he states, of the report from the United States' orthopaedic surgeon, "I did read Dr. Vince Paul's expert report," but does not in any way disagree with or otherwise attempt to rebut Dr. Paul's report. (Weisler Report at 10.)

evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii). Even if a report deals with "the same general subject matter" as another report, it is not a rebuttal report unless it *directly* contradicts or rebuts that report. *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 290 F.R.D. 11, 16 (D. Mass. 2013). A purported rebuttal that does not directly contradict another report "is more appropriately characterized as an untimely affirmative expert report." *Id*. at 17.

The United States timely disclosed three experts—an economist, a vocational specialist, and an orthopaedic surgeon—who prepared expert reports. Given the lack of meaningful document production from Plaintiff when their reports were due, all three experts were extremely modest in rendering their opinions. Dr. Roberts, the economist, opined that Plaintiff incurred medical expenses of $11,874.50 and property damage of $7,905.47. (Roberts Report at 2-3.) Importantly, Dr. Roberts did not opine on Plaintiff's potential lost wages. (*Id*. at 3.) Ms. Sawyer-Little, the vocational expert, provided only general opinions given the lack of information from Plaintiff at the time. (Sawyer-Little Report at 5 ("[A]dditional information is required in order to adequately render an opinion regarding his vocational capacity.").) Her report simply summarizes Plaintiff's work history and states that it falls into the unskilled and semi-skilled categories. (*Id*. at 4.) Dr. Paul, the orthopaedic surgeon, was similarly unable to render a concrete opinion given the inadequacy of Plaintiff's production. (Paul Report at 4 (stating that he "would not assign permanent impairment ratings without a bit more information").

- 5 -

Case 1:13-cv-00489-TDS-LPA   Document 25   Filed 01/13/15   Page 5 of 17

In contrast, Plaintiff's experts were given whatever materials and information they needed to prepare their reports, and they did so at length. The longest and most detailed report comes from Dr. Weisler, a psychiatrist. Dr. Weisler evaluated and interviewed Plaintiff for six hours before concluding, "Billy Lee Boles, Jr. unequivocally coded positive for a Current Major Depressive Episode/Disorder, Chronic Post Traumatic Stress Disorder (PTSD), and Panic Disorder during my MINI diagnostic interview for the current time and since his being attacked and injured." (Weisler Report at 1 (emphasis omitted).) Based on these alleged conditions, Dr. Weisler opined, "I do not feel he is capable of working in a public setting at this time." (*Id*. at 9.)

Of paramount importance to this motion, none of Dr. Weisler's opinions can be fairly characterized as rebuttals. The United States did not present a report from a psychiatrist or anything even remotely related to the opinions reached by Dr. Weisler. Indeed, given Plaintiff's response during his deposition that he had not been diagnosed with any mental health issues, there appeared no reason to do so. Dr. Weisler's only reference to one of the United States' experts was to say that he had read Dr. Paul's report, but he offered no criticism of that report. Accordingly, Dr. Weisler's report cannot be characterized as anything other than an untimely affirmative expert report.

Dr. Weisler's opinions, however, are the basis for many of the opinions reached by Plaintiff's other experts. Based on Dr. Weisler's opinion that Plaintiff is mentally incapable of working, Ms. Vargas, Plaintiff's vocational expert, opined that Plaintiff was severely vocationally disabled. (Vargas Report at 6 ("Based on the Mental Capacity

Assessment completed by Dr. Weisler, I would consider Mr. Boles to be severely vocationally disabled.").)  In so opining, Ms. Vargas never mentions the United States' vocational expert, Ms. Sawyer-Little, or her report.  Based on Ms. Vargas's opinion that Plaintiff cannot work but, if he could, he would be in private security or retail, Plaintiff's economist, Dr. Albrecht, opined that Plaintiff's lost earnings capacity is $764,414.  (Albrecht Report at 3.)  Again, Dr. Albrecht never mentions the United States' economics expert, Dr. Roberts, who explicitly did not render an opinion on lost wages.  Even Plaintiff's orthopaedic surgeon, Dr. Sloand, relies on Dr. Weisler, noting that Plaintiff "has been diagnosed with PTSD by a psychiatrist" and opining that some of Plaintiff's alleged impairments are "likely due to psychiatric elements."  (Sloand Report at 1, 2.)

From all of the foregoing, it is clear that Dr. Weisler's opinions regarding Plaintiff's alleged mental incapacity, not the United States' experts or their reports, form the basis for much, and perhaps most, of Plaintiff's experts' opinions.  They are therefore not rebuttals, but untimely affirmative expert reports, filed four months after Plaintiff's deadline for doing so had expired.

**III.  The Court Should Strike Plaintiff's Expert Reports and Exclude the Experts from Testifying at Trial.**

Having established that Plaintiff's four expert reports are untimely, "the next issue is what kind of sanctions to impose."  *Akeva*, 212 F.R.D. at 311.  "[I]n determining appropriate sanctions for Rule 16 violations, the first question is whether the party can show good cause for its failure to timely disclose."  *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 2005 WL 6043267, at *2 (M.D.N.C. July 7, 2005).

- 7 -

The Court may then consider a number of factors, including: (1) the explanation for the failure to obey the order, (2) the importance of the expert opinion, (3) the prejudice to the opposing party by allowing the disclosures, (4) the availability of alternative or lesser sanctions, (5) the interest in expeditious resolution of litigation, (6) a court's need to manage its docket, and (7) public policy favoring disposition of cases on the merits. *Id.*; *see also Akeva*, 212 F.R.D. at 311; *SMD Software, Inc. v. EMove, Inc.*, 2013 WL 5592808, at *4 (E.D.N.C. Oct. 10, 2013). "The factors involving docket control planning are sufficiently important to alone justify the exclusion of an untimely disclosed expert report or opinion even in absence of prejudice to the opposing party." *Akeva*, 212 F.R.D. at 311; *see also Walter Kidde Portable Equip.*, 2005 WL 6043267, at *2.

These factors favor striking Plaintiff's four untimely expert reports.

### A. Plaintiff's explanation for failure to obey the scheduling order.

Plaintiff missed his deadline to file affirmative expert reports by four months without disclosing any reason for his delay. Rather than request that the United States consent to an extension and then request such an extension from the Court, Plaintiff submitted what are obviously affirmative expert reports on the day of his rebuttal report deadline, stating they were offered "to contradict or rebut" the United States' experts. The United States is not privy to the strategic considerations behind the timing of Plaintiff's disclosures, but Plaintiff's failure to openly and transparently seek additional time is an important factor for the Court's consideration. *Akeva*, 212 F.R.D. at 311

("[S]ignificantly, plaintiff never sought an extension of time from the district court.") (quotation marks omitted).

### B. The importance of the expert opinion.

Plaintiff's own actions and his styling of the four untimely reports as rebuttals belie any argument that they are critical to his case.

First, the experts base their reports on three main things: (1) a meeting with Plaintiff,[4] (2) Plaintiff's medical and financial records, and (3) each other's reports. All of these things were exclusively in Plaintiff's control, and the fact that he delayed so long in arranging for his experts to meet with him and prepare their reports belies their importance. For example, Plaintiff met with Ms. Vargas on December 17, 2014, with Dr. Weisler on December 18, 2014, and with Dr. Sloand on December 29, 2014. (Weisler Report at 1; Vargas Report at 4; Sloand Report at 1.) Plaintiff initiated this case nearly two years ago, and the parties have been engaged in discovery since May 2014. All Plaintiff had to do in order to submit timely expert reports was meet with his experts earlier and give them the documents in his possession. That he chose not to do so counsels against a finding for their importance to Plaintiff's case.

Second, by styling the reports as rebuttals, Plaintiff has undermined any argument he might now advance regarding their importance to his case-in-chief. In the case of *Indura S.A. v. Engineered Controls Intern. Inc.*, for example, the court struck "a purported rebuttal expert report of a new expert," stating, "because Plaintiff Indura

---

[4] Plaintiff did not meet with his economist, Dr. Albrecht, but Dr. Albrecht relied on Ms. Vargas, who did meet with Plaintiff and who in turn relied on Dr. Weisler, who also met with Plaintiff.

- 9 -

sought to rely on Lorenzo only as a rebuttal witness (rather than to support its case-in-chief), the striking of his report and the exclusion of his testimony does not pose the prospect of undermining the legal viability of Plaintiff Indura's claims." 2011 WL 3862083, at *4, 16 (M.D.N.C. Sept. 1, 2011).

In addition, Plaintiff's claims in this case sound in ordinary negligence and negligence per se, theories that do not necessarily require expert testimony to demonstrate liability, as might be the case with other theories, such as medical malpractice.

Finally, just because an expert report has some importance to a plaintiff's claims does not mean it should not be stricken. In the *Walter Kidde* case, the court struck expert reports it noted "are important to Plaintiff's claim" because of the other factors discussed below. *Walter Kidde Portable Equip.*, 2005 WL 6043267, at *3.

### C.     Prejudice to the United States by allowing the disclosures.

As an initial matter, the United States notes that it need not demonstrate prejudice in order for the Court to strike Plaintiff's expert reports. *Walter Kidde Portable Equip.*, 2005 WL 6043267, at *2; *Akeva*, 212 F.R.D. at 311.

Even so, allowing Plaintiff to proceed with four previously undisclosed affirmative experts will greatly prejudice the United States. The United States has already expended considerable resources on this case, which has been pending for nearly two years. It has retained three expert witnesses who have already prepared written

- 10 -

Case 1:13-cv-00489-TDS-LPA   Document 25   Filed 01/13/15   Page 10 of 17

reports per the Court's scheduling order. Were the Court to allow Plaintiff to proceed with his four untimely experts, the following would need to take place:

- The United States would need to retain an expert in psychiatry who would undoubtedly need to examine Plaintiff and prepare a rebuttal to Dr. Weisler's report.

- The United States would need to prepare three new reports from its existing experts in order to respond to the belated opinions of Plaintiff's experts and the materials upon which they rely, many of which were not available to the United States when its experts prepared their reports.

- The United States would need to depose Plaintiff's four experts, no small undertaking considering each expert comes from a different and complex profession.

- The United States would most likely need to depose Plaintiff again regarding the new theories advanced in the untimely reports, especially those involving his alleged mental health issues.

Discovery will almost certainly have closed by the time the Court is able to rule on this motion, and the additional steps discussed above would require reopening discovery, postponing the dispositive motions deadline, and pushing back the trial setting.

These circumstances are highly prejudicial and warrant the striking of Plaintiff's expert reports and the exclusion of the experts' testimony. *See, e.g.*, *SMD Software,* 2013 WL 5592808 at \*6 ("[T]his case has been pending for a long time, and trial has been

specially set. This factor weighs against plaintiffs."); *Snoznik v. Jeld-Wen, Inc.*, 2010 WL 1924483, at *9 (W.D.N.C. May 12, 2010) ("This situation would not only result in additional expense to the parties, but would completely disrupt the trial schedule of this case."); *Walter Kidde Portable Equip.*, 2005 WL 6043267, at *3 ("If the court were to allow admission of Plaintiff's untimely expert reports, to avoid prejudice to Defendant the court would also have to grant Defendant more time to submit rebuttal expert reports. The court will not place itself in this position so close to the scheduled trial date, nor is the court willing to modify the trial calendar."); *see also Ruhland v. Walter Kidde Portable Equip., Inc.*, 179 F.R.D. 246, 250 (W.D. Wis. 1998) ("I find that exclusion of plaintiffs' expert witnesses is the appropriate sanction. The harm caused by plaintiffs' errors is significant. Equally troublesome, the cost to plaintiffs of having to comply with the pretrial conference order was negligible.").

### D. The availability of alternative or lesser sanctions.

Alternative sanctions are not sufficient in this case. In the *Akeva* case the court considered two untimely expert reports, striking one (the "Frederickson report") and allowing the other (the "Fields report"). 212 F.R.D. at 309-13. The court allowed the Fields report under the factors discussed above,[5] but the circumstances of this case are distinguishable, particularly as to the availability and appropriateness of lesser sanctions. First, the Fields report appears to have actually been a rebuttal report, such that allowing

---

[5] Of particular relevance to the court was the fact that the scheduling order was silent as to rebuttal reports, and the Fields report would have been timely under the default schedule in the Federal Rules.

it to remain would not wreak havoc on the case, while allowing four new affirmative reports so late in this case would do just that. *Id*. at 310 (noting that the report had "some aspects of rebuttal testimony"). Second, a large part of the Court's lesser sanction was to award the defendant its attorney's fees for moving to strike the Fields report and for the time it would spend in additional discovery. Here, that remedy is not available to the United States, making much of the lesser sanction in *Akeva* inapplicable. Instead, the appropriate remedy is that taken by the court for the Frederickson report, which the court struck, stating, "The disruption caused by the proliferation of untimely expert testimony is real and attorneys must know such will not be permitted." *Id*. at 312.

In addition, as discussed above, allowing lesser sanctions would necessitate extending discovery and pushing back the other deadlines in the case. The court in the *Indura* case found this alternative "unacceptable." *Indura*, 2011 WL 3862083, at *16; *see also SMD Software,* 2013 WL 5592808 at *6 ("Where this case has been pending for a long time, a continuance is not an immediately available, lesser sanction. A continuance would harm the interest in expeditious resolution of litigation and this court's need to manage its docket."). The Court should similarly find a lesser sanction insufficient here.

### E. The interest in expeditious resolution of litigation.

For all the reasons discussed above, striking Plaintiff's four untimely expert reports would further the interest in expeditious resolution of litigation.

### F. The court's need to manage its docket.

The court's need to manage its docket favors striking the four untimely expert reports. As stated by the court in the *Walter Kidde* case:

> The court's scheduling practice has proven to be effective for the management of individual cases and for overall docket control and management. Therefore, this court long ago determined that a pre-trial scheduling and management order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. . . . Given this court's history of strict adherence to discovery schedules, the parties should have treated the deadlines as exactly that—deadlines—rather than as guidelines. Thus, the court finds that the expert reports and/or declarations of Shefte, Trew, and McClosky shall be excluded.

*Walter Kidde Portable Equip.*, 2005 WL 6043267, at *3 (quotation marks omitted); *see also Akeva*, 212 F.R.D. at 311 ("[S]trict adherence to discovery rules are necessary to prohibit not only trial by ambush, but discovery gaming wherein a party holds back evidence or does not pay sufficient attention in the first instance to develop expert testimony. All of this imposes costs on the court and the opposing parties, both in the short and long run.").

### G. Public policy favoring disposition of cases on the merits.

As discussed above, Plaintiff's statement that his reports are "offered to contradict or rebut" the United States' experts belies any potential public policy argument. *Indura*, 2011 WL 3862083, at *16 ("[B]ecause Plaintiff Indura sought to rely on Lorenzo only as a rebuttal witness (rather than to support its case-in-chief), the striking of his report and the exclusion of his testimony does not pose the prospect of undermining the legal viability of Plaintiff Indura's claims. Said sanction thus does not come into conflict with

any public policy favoring merits-based resolution of cases."). In addition, because Plaintiff's theories of liability do not require expert testimony, he remains free to proceed on the merits of his case without his four untimely experts.[6]

## CONCLUSION

While striking an expert report is a serious sanction, it is warranted under the facts and law discussed above. Significantly, this situation is of Plaintiff's own making. As the court in the *Ruhland* case stated, "It is evident that with little expense and proper diligence, plaintiffs could have complied with the pretrial conference order and avoided what seems to be an otherwise draconian sanction." *Ruhland*, 179 F.R.D. at 251.

WHEREFORE the United States respectfully requests that Plaintiff's four untimely expert reports be stricken and that testimony from his proposed experts be excluded from the trial in this matter.

---

[6] The United States does not concede that there is any merit to Plaintiff's case, but rather makes the point that striking Plaintiff's untimely expert reports will not preclude him from attempting to prove the merits of his case through other means.

This the 13th day of January, 2015.

    Respectfully submitted,

    RIPLEY RAND
    United States Attorney



    /s/ Joan B. Binkley
    Assistant United States Attorney
    NCSB # 18100
    United States Attorney's Office
    Middle District North Carolina
    101 S. Edgeworth Street, 4th Floor
    Greensboro, NC 27401
    Telephone: (336) 333-5351
    E-mail: joan.binkley@usdoj.gov



    /s/ Steven N. Baker
    Steven N. Baker
    Assistant United States Attorney
    NCSB #36607
    United States Attorney's Office
    101 South Edgeworth Street, 4th Floor
    Greensboro, NC 27401
    336/333-5351
    steve.baker3@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | | |
|---|---|---|---|
| BILLY LEE BOLES, JR., | ) | | |
| Plaintiff, | ) | | |
| | ) | 1:13CV00489 | |
| v. | ) | | |
| | ) | | |
| UNITED STATES, | ) | | |
| Defendant. | ) | **CERTIFICATE OF SERVICE** | |

    I hereby certify that on January 13, 2015, the foregoing brief was electronically filed with the Clerk of the Court using the CM/ECF system, and I hereby certify that the document was served via that system on the following CM/ECF participants:

Eric A. Richardson, Esquire
Oxner Thomas & Permar, PLLC
1155 Revolution Mill Drive, Studio 4
Greensboro, NC 27405

and I certify that the document was mailed to the following participants:

Laurie R. Stegall
Stegall Law Firm
445 Dolley Madison Road, Suite 102
Greensboro, NC 27410

    Respectfully submitted,

    RIPLEY RAND
    UNITED STATES ATTORNEY


    /s/ Joan B. Binkley
    Assistant United States Attorney
    NCSB # 18100
    United States Attorney's Office
    Middle District North Carolina
    101 S. Edgeworth Street, 4th Floor
    Greensboro, NC 27401
    Telephone: (336) 333-5351
    E-mail: joan.binkley@usdoj.gov